UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| FRANCISCO SILVA, | ] |
| Plaintiff, | ] |
| vs. | ]   7:09-cv-00618-LSC |
| LINDSEY CONSTRUCTION COMPANY, INC., *et al.*, | ] |
| Defendants. | ] |

MEMORANDUM OF OPINION

I.  Introduction.

Before this Court is a motion for summary judgment on Plaintiff's claims filed by Lindsey Construction Company, Inc. ("Lindsey" or "Defendant") on May 28, 2010. (Doc. 28.)  Also pending is Lindsey's motion to strike the affidavit of Chris Fairchild.  (Doc. 34.) Plaintiff Francisco Silva ("Silva" or "Plaintiff") fell from a ladder at a construction site and sued Lindsey, the general contractor, and Simplex Grinnell ("Simplex"), the subcontractor, for negligence and wantonnesss.  (Doc. 1.)  This Court dismissed Simplex Grinnell in June 2009. (Doc. 10.)  The issues raised in

Defendant's motion for summary judgment have been briefed by both parties and are now ripe for decision. After considering the legal arguments and evidence presented, this Court grants Defendant's motion for summary judgment.

II.    Facts.[1]

Lindsey is a Arkansas-based construction company that specializes in building apartment homes and golf courses.  In 2006 and 2007, Lindsey served as general contractor for construction of the Links, a community of apartment buildings in Tuscaloosa, Alabama, and for renovation of an existing golf course on the property. Lindsey set up an office within the community and placed Skip and Sharon Croft in the office to serve as job superintendent and assistant superintendent respectively.

During construction, Lindsey normally kept eight to ten of its own employees onsite and charged them with ensuring that the site remained

---

[1] The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

clean. Lindsey also employed a safety director who visited the site intermittently throughout the year, in intervals of two weeks to three months. In addition to having its own employees onsite, Lindsey engaged the services of several subcontractors, such as Hasley Construction ("Hasley") early during the construction and Simplex later during the construction.

Lindsey required subcontractors to comply with safety guidelines. Lindsey also required each contractor's supervisor to attend weekly safety meetings. Both the guidelines and the meetings addressed ladder safety. Specifically, the guidelines provided that "[t]he ladder must be secured and stabilized." (Doc. 28-2, at 17.) Generally, a subcontractor's foreman handled safety for that subcontractor. Lindsey, however, would prevent a subcontractor from performing any dangerous act observed by one of its employees.

Hasley erected the vertical construction, the frames. To erect these frames, Hasley first built guardrails and ladders out of two by six inch lengths of lumber provided by Lindsey. Hasley secured the ladders by screws or nails to the second floor of each building. After completing a building, Hasley left the ladder in place.

After the framing was complete, Simplex installed sprinkler systems and other fire protection equipment in the apartment units. Simplex's accepted bid constitutes the subcontract with Lindsey and addresses ladders in the section labeled "working conditions." (Doc. 28-2, at 62.) Under that section, the subcontract set forth the following: "[t]his proposal is based on installation being made from finished, unobstructed concrete floors by using rolling scaffolding, forklift, ladders or mobile lift at bidder's option." (Doc. 28-2, at 62.)

Simplex had employed Silva as a fire and sprinkler technician since 2001. Simplex had Chris "Pancho" Hallman supervising Silva. Generally, Silva would arrive at the Links, retrieve his tools from Simplex's storage bin, and proceed to his assigned apartment unit. Once finished with a unit, Silva would inform Hallman and receive another assignment. Even though Silva had a ladder on his truck, he used the ladders built by Hasley to access the ceilings and other overhead areas. After permanent stairs were built, Lindsey would move the Hasley ladders to another building or discard them.

On March 29, 2007, Silva climbed one of Hasley's ladders to install a sprinkler in a second floor unit. Silva testified that he "felt comfortable to

go up" the ladder, though he had not used this type of wooden ladder before.  In his words, it "looked like a fair ladder, fair condition . . . ." (Doc. 28-2, at 39.)  His assistant also climbed the ladder.  After installation, he attempted to descend with a drill in his right hand.  He grabbed the ladder with his left hand and placed both his feet, one at a time, on the first rung.  The wooden ladder then wobbled left to right causing Silva to yield his grip, fall onto the ladder rack of his company truck below, and lose consciousness.

After the accident, Sharon Croft went to the unit and checked the still upright ladder.  Because she could not pull the ladder away from the building, she concluded that the ladder remained secured to the second floor.

III.   Standard.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The party moving for summary judgment "always bears the initial

responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the movant has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224

(11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

IV.  Analysis.

Silva claims that Lindsey breached its duty to provide him with a properly secured ladder. Lindsey responds that it had no duty to Silva, a subcontractor's employee.

To recover under a theory of negligence or wantonness, plaintiffs must show that a defendant owed them a legal duty. *See*, *e.g.*, *E.H. v. Overlook Mountain Lodge*, 638 So. 2d 781, 783 (Ala. 1994). The trial judge determines the existence of duty as a question of law. *State Farm Fire and Gas. Co. v. Owen*, 729 So. 2d 834, 839 (Ala. 1998). Contractors generally owe no duty to an independent subcontractor's employees. *Stovall v. Univ. Const. Co.*, 893 So. 2d at 1096; *Elder v. E.I. Dupont De Nemours and* Co., 479 So. 2d 1243, 1248 (Ala. 1985). But exceptions exist. For example, if the general contractor reserves the right to control the manner of the subcontractor's performance, then the contractor may have a duty to provide a safe workplace. *Stovall*, 893 So. 2d at 1098; *Elder*, 479 So. 2d at 1248. In the context of ladder injuries, the Alabama Supreme Court provides that "if the

general contractor . . . did not control the ladder or equipment when the employe[e] was injured, or had no knowledge of the way in which the ladder was used, then the general contractor would not be liable to the employee." *Barron v. Construction One*, 514 So. 2d 1351, 1353 (Ala. 1987).

Silva contends that an exception applies to his situation and alleges four duties of Lindsey's that an unsecured ladder would violate. (Doc. 32, at 2.) First, Silva argues that Lindsey triggered its statutory duty to provide a safe workplace by exercising a sufficient degree of control over Simplex. Ala. Code § 25-1-1(a). Second, Silva argues that Lindsey had a contractual duty to provide properly secured ladders. (Doc. 32, at 12.) Third, Silva suggests that Lindsey undertook a duty to provide those ladders on the construction site by providing the raw material for the ladders and moving them among buildings. (Doc. 32, at 13.) Finally, Silva contends that prevailing custom begets a duty requiring Lindsey as general contractor to provide a means of accessing upper levels. (Doc. 32, at 12.)

A.   Duty from Statutory Requirement to Provide Safe Workplace

The Alabama Code requires employers to furnish reasonably safe employment. Ala. Code § 25-1-1(a). But a general contractor must retain

possession or control over the premises before a duty arises to furnish reasonably safe premises for a subcontractor's employees.  *See Elder*, 479 So. 2d at 1248.

Lindsey required subcontractors to comply with safety policies and procedures, held weekly safety meetings, distributed safety literature addressing ladder safety to subcontractors, and retained the ability to abort an observed safety violation.  In addition, Lindsey kept the Crofts as onsite project managers.

Yet Silva, a Simplex employee, rarely interacted with Lindsey. Another Simplex employee supervised him.  He used tools from Simplex's storage area because Lindsey did not provide equipment for any of the subcontractors.  Simplex assigned him to an apartment unit, and he reported back to Simplex when he completed his assignment.  Simplex provided all of Silva's instruction; Lindsey did not supervise or instruct him.

A "general administrative responsibility for company-wide safety' is insufficient to find liability for failure to provide a safe workplace." *Stovall*, 893 So. 2d at 1098 (quoting *Kennemer v. McFann*, 470 So. 2d 1113, 1117 (Ala. 1985).  General administrative responsibility includes providing safety

literature, looking for blatant safety violations, and even setting up and implementing a safety system. *Id.* Lindsey acted as general contractor onsite, administering the project and ensuring minimum compliance with safety rules. These actions do not create a duty to provide a safe workplace.

Rather, the ultimate inquiry remains into whether Lindsey exercised any control over how Silva performed his work. *Id.* Silva's own testimony fails to show Lindsey acted with the requisite control. For instance, Silva testified in his deposition that he did not know any Lindsey employees. (Doc. 28-1, at 57.) He only knew the Simplex employees that he worked with directly. *Id.* Lindsey would have difficulty controlling the manner in which Silva worked when he did not know of its employees' presence. Lindsey thus did not control the manner of Silva's work.

B.   Duty from Contract.

The contract contemplated that Simplex would perform its work from its choice of "scaffolding, forklift, ladders, or mobile lift. . . ." (Doc. 28-2, at 62.) The parties dispute whether this language obligated Simplex to provide its own ladders or obligated Lindsey to provide Simplex with ladders. (Doc. 33, at 2.) But their dispute does not matter. Even if the contract

language obligated Lindsey to provide ladders, the contract does not dictate how Simplex had to use those ladders. As the Alabama Supreme Court said, "the contractor/subcontractor relationship hinges on the contractor's allowing the subcontractor to do his work without interference. The mere fact that [the contractor] contracted to *provide* [the subcontractor's] employees with lighting in no way translates into an automatic *reservation of control* over how that lighting is used." *Stovall*, 893 So. 2d at 1097. Silva strains to find a contractual requirement to provide ladders. Yet Alabama law requires more. Without Lindsey's reserving control, the contractual language fails to create a duty.

    C.    Duty from Undertaking

Third, Silva suggests that Lindsey undertook a duty to provide ladders on the construction site by providing raw material for the ladders and moving them among buildings. (Doc. 32, at 13.) But this attempt to establish duty also fails. Even if Lindsey did undertake to provide ladders—despite not building them—duty accompanies control, not provision. *Stovall*, 893 So. 2d at 1097. Alabama law requires Lindsey to control the ladder at the time of

Silva's injury. *See Barron v. Construction One*, 514 So. 2d 1351, 1353 (Ala. 1987).

Hundreds of ladders littered the Links construction site, some built by Hasley, others brought by subcontractors. Lindsey's onsite manager, Sharon Croft, testified that she knew little about the exact number of ladders, how Hasley built ladders,[2] or how ladders were secured. (Doc. 28-2, at 21.) Regarding the specific ladder Silva fell from, Croft testified she had never seen it moved. *Id*. But she also testified that she would not know if another subcontractor had moved that ladder, without her observing it. (Doc. 28-2, at 24.) As project manager, Croft's responsibility was to pay subcontractors and order additional material for the site.

Conversely, subcontractors controlled the ladder use. For example, if a subcontractor deemed a ladder unsafe, then that subcontractor would have

---

[2] Though not raised by Plaintiff, Lindsey is also not liable for Hasley's actions in building the ladder. "[A] prime contractor is not liable for the acts of an independent subcontractor," *Elder*, 479 So. 2d at 1248, unless the contractor "employs a [sub]contractor to carry on an inherently or intrinsically dangerous activity. . ." *Fike v. Peace*, 964 So. 2d 651, 654 (Ala. 2007). Lindsey hired Hasley, an independent company, to erect the wooden frames. To do that, Hasley built ladders to access the second floor. Working from a ladder or using a ladder to climb to another floor is not an inherently dangerous activity. *See*, *e.g.*, *Stovall*, 893 So. 2d at 1099 ("We found no evidence . . . that working from a ladder was intrinsically dangerous.").

to provide its own ladder. Simplex had its own ladders; Silva had his own ladder. (Doc. 33-1, at 13.) Silva characterizes Lindsey's ladder usage policy as an "invitation" to use the ladders, which, of course, implies that Lindsey did not dictate or control how Simplex or Silva used the ladders. (Doc. 32, at 14.) In short, Lindsey permitted access to ladders that Simplex did not have to use. Lindsey thus did not control how Simplex used those ladders.

    D.    Duty from Custom

Finally, Silva contends that prevailing custom created a duty requiring Lindsey to provide a way to access upper levels, a ladder in this case. Silva rests this legal proposition on a 1922 New York decision and a 1961 New Jersey decision. *Cassin v. Stillman, Delehanty, Ferris Co.*, 133 N.E. 906 (N.Y. 1922); *Hardman v. Ford Motor Co.*, 175 A.2d 455 (N.J. App. 1961). But Silva cites no controlling law from Alabama. Alabama law requires control over the ladder at the time of injury before imposing a duty. *See Barron,* 514 So. 2d at 1353. A custom to provide ladders is insufficient without a showing of control. *See, e.g., Stovall*, 893 So. 2d at 1097. As shown previously, the evidence does not show that Lindsey retained control over the ladder Silva used.

Regardless, the *Cassin* and *Hardman* decisions are factually distinct. In *Cassin,* the defendant general contractor admitted to building the ladder, to directing plaintiff to use that ladder, and to knowing the ladder's insufficiency for the use that injured plaintiff. *See Cassin*, 133 N.E. at 907. In *Hardman,* no direct proof existed as to who built the ladder. *Hardman*, 175 A.2d at 463. The trial court thus allowed evidence of custom to fill in that evidentiary gap. *Id.* In this case, no one directed Silva to use the ladder, and the evidence shows that Hasley built the ladder. Lindsey has no duty stemming from custom to provide a ladder.

Lindsey, in sum, did not owe a duty to Silva. Consequently, Lindsey did not act negligently or wantonly.

V. Conclusion.

For the reasons set forth above, Defendant's motion for summary judgment will be granted.[3] A separate order will be entered.

---

[3] Lindsey's motion to strike the affidavit of Chris Fairchild is moot. (Doc. 34)

Done this <u>27th</u> day of September 2010.

                                          _____
                                               L. SCOTT COOGLER
                                         UNITED STATES DISTRICT JUDGE